## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOSEPHINE DOUGLAS,

     Plaintiff,

v.                                                             Case No.: 2:24-cv-00505-MLG-KRS

THE EVANGELICAL LUTHERAN
GOOD SAMARITAN SOCIETY d/b/a
GOOD SAMARITAN SOCIETY
BETTY DARE, and SANFORD HEALTH
FOUNDATION,

     Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING IN PART
### DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

### FACTUAL BACKGROUND

Defendants, the Evangelical Lutheran Good Samaritan Society d/b/a Good Samaritan Society Betty Dare ("Good Samaritan"), and Sanford Health Foundation ("Sanford Health"), operate nursing homes and healthcare facilities. Doc. 1 at 1 ¶ 1. For approximately two years, Plaintiff Josephine Douglas was employed as a Licensed Nursing Facility Administrator at the Good Samaritan facility located in Alamogordo, New Mexico. *Id.* at 1 ¶ 1, 2 ¶ 3. In that capacity, she was required to ensure Good Samaritan complied with the New Mexico State Department of Health (NMDOH) reporting requirements concerning abuse or neglect of the residents. *Id.* at 8 ¶¶ 7-9. Douglas claims Defendants stymied her efforts to investigate such accusations and that they ultimately fired her in retaliation for her truthful reports to state regulators. *Id.* at 8-10 ¶¶ 11-22 (outlining incident reports and investigations); *see also id.* at 10 ¶ 23 (alleging she was punished for "refus[ing] to yield to Defendants' attempts to have her file false claims with the [NMDOH]").

1

Based on these allegations, Douglas filed suit for, inter alia, violations of the Elder Justice Act ("EJA") under 42 U.S.C. § 1320b-25.[1] *See generally* Doc. 1 at 12-13.

## PROCEDURAL HISTORY

Defendants subsequently moved for judgment on the pleadings as to Douglas's putative EJA claim asserting the statute does not confer a private right of action.[2] Doc. 17 at 5-7; Doc. 22 at 2-4; *see* Fed. R. Civ. P. 12(c). In response, Douglas concedes that Section 1320b-25 does not expressly provide a private civil remedy, but she nevertheless argues the statute implicitly contains such a right. Doc. 20 at 7-8 (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975) (providing four factors to consider if a statute implicitly creates a cause of action)). That legal question is the matter presented here.

## DISCUSSION

"The test for determining whether a statute creates a private right of action has evolved substantially over the last thirty[-plus] years[,]" and the inquiry has been effectively condensed into one question: "whether Congress expressly or by implication, intended to create a private cause of action." *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1266-67 (10th Cir. 2004) (quotation marks omitted) (noting that courts have shifted away from the *Cort* four-part inquiry). If a private right of action has not been explicitly created, then the "judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private

---

[1] Douglas raises other causes of action not at issue here including retaliatory discharge and claimed violations of the New Mexico Medicaid False Claims Act, NMSA 1978, §§ 27-14-1 through -15. Doc. 1 at 10-12.

[2] Defendants also challenged the viability of Douglas's second cause of action for violations of the New Mexico Medicaid False Claims Act. Doc. 17 at 1-5. They withdrew their arguments as to Count II after Douglas clarified that her allegations were not based on provisions governing a qui tam action but are instead based on the Act's employee protections under NMSA 1978, § 27-14-12 (2004). Doc. 20 at 4-7; Doc. 22 at 1.

right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Without

statutory intent to create a private right, "a cause of action does not exist and courts may not create

one, no matter how desirable that might be as a policy matter, or how compatible with the statute."

*Id.* at 286-87.

Turning to the EJA, Congress passed the statute alongside the Affordable Care Act, 42

U.S.C. § 180001 et seq., to address the abuse and neglect of elder citizens in America. *See* Brian

W. Lindberg, Charles P. Sabatino & Robert B. Blancato, *Bringing National Action to a National*

*Disgrace: The History of the Elder Justice Act*, 7 NAELA J. 105, 105-06 (2011). The EJA includes

several initiatives intended "to enhance the capacity of long-term care settings to prevent and

respond to abuse, neglect, and exploitation." *Id.* at 116; *see, e.g.*, 42 U.S.C. § 1397j(6) (defining

"elder justice" as "efforts to . . . prevent, detect, treat, intervene in, and prosecute elder abuse,

neglect, and exploitation"). To effectuate these goals, Section 1320b-25 provides procedures and

requirements for reporting crimes and other violations of the EJA in federally funded long-term

care facilities. *See* § 1320b-25(b); *see also* § 1320b-25(c)(1)-(4) (providing that the Secretary of

Health and Human Services ("Secretary") will determine whether civil penalties are appropriate);

42 U.S.C. § 1301(a)(6) (defining "Secretary" under the EJA). Section 1320b-25(d) protects facility

employees who seek to comply with subsection (b)'s reporting requirements but face backlash.

Specifically, this subsection expressly prohibits long-term care facilities—like Defendants—from

retaliating against their employees for filing a complaint or a report concerning unlawful activity.

§ 1320b-25(d)(1). Should the Secretary find that a facility retaliated against an employee, the

facility will be subject to a hefty civil monetary penalty, amongst other consequences. § 1320b-

25(d)(2); *see also* 42 U.S.C. § 1320a-7a(c)(1) (providing that the Secretary "may initiate a

proceeding to determine whether to impose a civil money penalty . . . only as authorized by the

3

221b1584c885061f

Attorney General pursuant to procedures agreed upon by them"). Employees are to be notified of their rights and protections under Section 1320b-25(d)(1) by a "conspicuously" posted sign that must "include a statement that an employee may file a complaint with the Secretary against a long-term care facility that violates the provisions of this subsection and information with respect to the manner of filing such a complaint."[3] § 1320b-25(d)(3).

As these statutory provisions demonstrate, an employee's recourse for an employer's retaliatory conduct is expressly defined by Congress and must be carried out by the Secretary. Douglas has not cited, and the Court is unaware of, language within the EJA that evinces Congress's intent to resolve retaliatory issues via litigation (or other administrative methods), rather than the Secretary-led complaint process. Moreover, the assessment of potential penalties— which are the only remedies provided for retaliatory conduct—is within the Secretary's sole discretion. *See* § 1320b-25(d)(2). Statutory context reinforces this conclusion—no other provision within the EJA gives the Court leeway to imply that an employee has a right to bring a private cause of action outside of the complaint process, let alone create a private remedy.

Therefore, the Court (like numerous others in jurisdictions around the country) concludes the EJA is devoid of rights-creating language and cannot be reasonably read to imply congressional intent to create an opportunity for litigation. *See, e.g.*, *Ferlingere v. Burkholder*, No. 3:16-cv-00207, 2016 U.S. Dist. LEXIS 140630, at *6 (D. Nev. Aug. 4, 2016) (holding there was no federal question jurisdiction under the EJA because, "[w]hile the United States may choose to initiate a prosecution for elder abuse, the EJA does not provide [the plaintiff] a civil cause of action"), *report and recommendation adopted*, No. 3:16-cv-00207, 2016 U.S. Dist. LEXIS 140632 (D. Nev. Oct.

---

[3] There is no indication Douglas filed a complaint with the Secretary under Section 1320b-25(d)(3).

11, 2016); *Ortiz v. Tchorzewski*, Civil No. 3:23-CV-1213, 2024 U.S. Dist. LEXIS 194484, at \*12 (M.D. Pa. Oct. 25, 2024) (holding the EJA "does not create a private right of action" and dismissing the claim); *Kampfer v. Nathan Littauer Hosp.*, No. 1:22-cv-1235, 2023 U.S. Dist. LEXIS 130622, at \*9-11 (N.D.N.Y. July 28, 2023) (finding the same and collecting cases). Douglas's allegations, as stated in Count III, may not be proven up and resolved through civil litigation. Her claim under Section 1320b-25 fails as a matter of law. Doc. 1 at 12-13; Fed. R. Civ. P. 12(c).

## CONCLUSION

Based on the foregoing, Defendants' Motion for Judgment on the Pleadings, or in the Alternative for Summary Judgment, on Plaintiff's Statutory Claims (Count II and III), is granted in part. Doc. 17. Judgment is entered in favor of Defendants on Count III.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA